**James L. Driessen**, USB#09473, jd@driessenlaw.com
Driessen Law
305 N 1130 E
Lindon, UT 84042
Ph: (801)796-6924
Fx: (801)785-2744

```
                                            FILED
                                     U.S. DISTRICT COURT

                                     2011 NOV -3 P 12: 19

                                     DISTRICT OF UTAH
                                     BY:
                                         DEPUTY CLERK
```

# In the United States District Court, for the
# CENTRAL DISTRICT OF UTAH

## COMPLAINT AND JURY DEMAND

The Timpanogos Academy Foundation (a not-for-profit foundation) DBA Timpanogos Academy, 70 South 100 East, Lindon, UT 84042 (Hereinafter, individually and collectively "Timpanogos Academy" or "Plaintiff")

v.

"Centurylink" or Centurylink, Inc. or Century Link Communications, of 100 CenturyLink Drive Monroe, LA 71203, formerly "Qwest" Qwest Corporation, Qwest Communications, Qwest Communications LLC, Qwest Communications Corporation, Qwest Communications International, Inc., including its parent groups or subsidiaries as organized (Hereinafter, individually and collectively "Centurylink" or "Defendant").

And

Afni,Inc. of 1310 Martin Luther King Drive, Bloomington, IL 61702, including its parent groups or subsidiaries as organized (Hereinafter, individually and collectively "Afni" or "Defendant").

Case No.·

Filed: \_\_\_\_\_, 2011

```
Case: 2:11cv01019
Assigned To : Nuffer, David
Assign. Date : 11/3/2011
Description: Timpanogos Academy
Foundation v. Centurylink et al
```

Judge:

Jury Demand Endorsed Herein on All Issues so Triable

Complaint for Money Damages and Injunctive and Declaratory Relief.

1

COMES NOW the Plaintiff, Timpanogos Academy, after numerous good faith attempts to resolve differences between the parties, and files an action for recovery of actual and statutory damages and costs by reason of the Defendants' breach of contract, fraud, misrepresentation, injury to credit reputation, harassment and violations of the Consumer Credit Protection Act (hereinafter "CCPA"), 15 U.S.C. § § 1601 to 1693f, more specifically; the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. 1692 et seq., Fair Credit Billing Act (hereinafter "FCBA"), 15 U.S.C. § 1666 et seq., Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. § 1681 et seq., Equal Credit Opportunity Act (hereinafter "ECOA"), 15 U.S.C. § 1691 et seq.,Truth In Lending Act (hereinafter "TILA") 15 U.S.C. § 1601, Utah Code § 70C-3-101 as is unaffected by Section 32 of Regulation Z, 12 C.F.R., Sec. 226.32 "Regulation Z (hereinafter "Reg.Z") and Utah Consumer Sales Practices Act (hereinafter "CSPA"), Utah Code § 13-11-1 et. seq., Utah Unfair Practices Act, Utah Code § 13-5-1 et. seq. (hereinafter "UPA") and accompanying rules and regulations for all the above.

PARTIES

1. Plaintiff, Timpanogos Academy, is a Utah entity residing in the City of Lindon, Utah County, Utah.

2. Defendant, Centurylink, Inc. is a Louisiana Corporation, doing business in Utah, with its principal place of business at 100 CenturyLink Drive Monroe, LA 71203.  Its registered agent for service of process is at C T CORPORATION SYSTEM, 136 EAST SOUTH TEMPLE, SUITE 2100 Salt Lake City UT 84111.

3. Defendant Afni is an Illinois Corporation, doing business in Utah, with its principal place of business at 1310 Martin Luther King Drive, Bloomington, IL 61702. Its registered agent for service of process is at C T CORPORATION SYSTEM, 136 EAST SOUTH TEMPLE, SUITE 2100 Salt Lake City UT 84111.

JURISDICTION AND VENUE

4. Jurisdiction is vested in this Court pursuant to TIL § 130(e) (FCBA 15 U.S.C. § § 1640(e)), § FCRA 15 U.S.C. § 1681, ECOA 15 U.S.C. § 1691e, FDCPA 15 U.S.C. § 1692k(d) without regard to the amount in controversy; 28 U.S.C. § 1337 and Pendant Jurisdiction.

5. Venue is appropriate pursuant to 28 U.S.C. § 1391(b).

FACTUAL ALLEGATIONS

6. On or about September 27, 2010 a collections company, Afni, Inc. (Hereinafter "Afni")of 404 Brock Drive, PO Box 3517, Bloomington, IL 61702-3517, contacted Plaintiff via postal mail claiming to be an "agent" ("collection agency") acting in behalf of "Centurylink (formerly Qwest)."

7. The claim being processed by Afni involved a purported payment due to Centurylink (formerly Qwest) for a cancellation fee which Plaintiff denies it owes. Plaintiff did not request or approve any cancelation fees or authorize any such terms to creating the account.

8. Defendant has been unable and/or unwilling to produce any written or recorded verbal authorization by Defendant of agreement to cancellation fees for "early" disconnect.

9. In attempt to resolve the dispute Defendant has claimed there was "verbal authorization" but refuses to produce a copy or recording of any such.

10. Following a good faith attempt to resolve a billing dispute with the merchant for services not delivered in accordance with the agreement made at the time of the transaction and gave Centurylink (formerly Qwest) written notification of a billing error.

11. Centurylink (formerly Centurylink (formerly Qwest)) has responded only by continuing to demand payment, but did not otherwise acknowledge Plaintiffs' notification of the billing error or investigate the circumstances by which the alleged account came into existence.

12. Without an explanation and in violation of law, Centurylink (formerly Centurylink (formerly Qwest)) has failed to resolve Plaintiff's dispute. There was no evidence that Centurylink (formerly Centurylink (formerly Qwest)) conducted a reasonable investigation or even attempted to verify Plaintiff's dispute. Centurylink (formerly Centurylink (formerly Qwest)) did not provide Plaintiff with an explanation setting forth the reasons for Centurylink (formerly Qwest)'s belief that the billing error alleged by Plaintiff was incorrect in whole or part.

13. After receiving no adjustment, Plaintiff continued to write Centurylink (formerly Qwest) concerning the error.

14. Centurylink (formerly Qwest) began charging Plaintiff monthly late payments.

15. In connection with said transaction, Centurylink (formerly Qwest) failed to properly issue a credit to Plaintiffs account. Centurylink (formerly Qwest)'s act is a per se violation of the Consumer Credit Protection Act (hereinafter "CCPA"), 15 U.S.C. § § 1601 to 1693f, more specifically; the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. 1692 et seq., Fair Credit Billing Act (hereinafter "FCBA"), 15 U.S.C. § 1666 et seq., Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. § 1681 et seq., Equal Credit Opportunity Act (hereinafter "ECOA"), 15 U.S.C. § 1691 et seq.,Truth In Lending Act (hereinafter "TILA") 15 U.S.C. § 1601, Utah Code § 70C-3-101 as is unaffected by Section 32 of Regulation Z, 12 C.F.R., Sec. 226.32 "Regulation Z (hereinafter "Reg.Z") and Utah Consumer Sales Practices Act (hereinafter "CSPA"), Utah Code § 13-11-1 et. seq., Utah Unfair Practices Act, Utah Code § 13-5-1 et. seq. (hereinafter "UPA") and accompanying rules and regulations for all the above and is fraud per se.

16. In connection with said transaction Centurylink (formerly Qwest) failed to disclose on the Account statement the disputed amount and that its payment and related charges are not required prior to Centurylink (formerly Qwest)'s compliance with the error resolution procedures and while Plaintiff exercised its rights under 15 U.S.C. § 1666, Centurylink (formerly Qwest) failed to note on Plaintiffs statement the amount in dispute and the fact Plaintiff is not responsible for finance charges on the disputed amount while Centurylink (formerly Qwest) is investigating Plaintiff's claim. The Defendants' acts are a per se violation of the Utah's CSPA and UPA and are fraud per se.

17. In connection with said transaction, Centurylink (formerly Qwest) has failed to comply in whole or in part with 15 U.S.C. 1666 et seq. and deliberately chose to ignore the law and totally disregarded its obligation to Plaintiff as set forth by 15 U.S.C. 1666. Centurylink (formerly Qwest) was not and is not now in compliance with the error resolution procedures as set forth by law.

18. In connection with said transaction, Centurylink (formerly Qwest) illegally began collection of the disputed amount prior to any resolution, in accordance with the law, of the alleged error.

19. Centurylink (formerly Qwest) began attempts to collect the disputed amount beginning through a series of harassing telephone calls. Plaintiff explained the amount was in dispute and requested not to be called again. The Centurylink (formerly Qwest) call center said it was not able to take Plaintiff off the call cycle and Plaintiff was not placed off the call cycle.

4

20. Centurylink (formerly Qwest) continued to call plaintiff. Plaintiff was told it was still in the system and demanded to know why the calls continued. Plaintiff was told once it was in the system and could not be deleted.

21. On or about January 3, 2011, Plaintiff began receiving written and verbal communication from West Asset Management of 7171 Mercy Road, Omaha Nebraska 68106 in the Practice of Debt Collection.

22. By reassigning the disputed claim yet to another collection agency, in connection with said transaction, Centurylink (formerly Qwest) is in willful noncompliance with the FCRA 15 U.S.C. § 1681 et seq. because they knowingly inserted false and/or reported damaging information into credit reports failing to report the debt as in dispute.

23. On April 22, 2010, CenturyLink (at this point still legally known as CenturyTel, Inc.) announced it would acquire Qwest in a stock-for-stock transaction. The merger was completed on April 1, 2011

24. On October 16, 2011, despite having received prior notice of the billing dispute, and notice that Plaintiff was represented by counsel, Afni Inc. sent another threatening directly to the Plaintiff's address entitled "COLLECTION NOTICE" informing Plaintiff that Afni "may report information about your account to credit bureaus" in violation FDCPA Section 805(a) concerning a consumer represented counsel. 15 U.S.C. § 1692

25. In connection with said transaction, Centurylink (formerly Qwest) may not directly or indirectly make or threaten to make an adverse report about Plaintiffs credit based on nonpayment of the disputed amount, or report or threaten to report that the disputed amount is dispute. This act by Centurylink (formerly Qwest) also violates Plaintiff's rights under the ECOA 15 U.S.C. § 1691 et seq. for discrimination in reporting information based on Plaintiffs good faith exercise of its rights under the CCPA. The Defendants' acts are a per se violation of the Utah CSPA fraud per se.

26. In connection with said transaction, Centurylink (formerly Qwest) has violated the FDCPA. Afni and West Asset Management in the course of telephone conversations lead Plaintiff to believe they were collecting for "Centurylink (formerly Qwest)" which purported purchase, Plaintiff did not ever make. At all times Afni and West Asset Management employees clearly stated they could not assist the Plaintiff and she would have to take up her grievance with Centurylink (formerly Qwest). Creditors collecting for another person

fit the statutory definition of a debt collector and are subject to the FDCPA 15 U.S.C. 1692 et seq.

27. The first opportunity Plaintiff had to look at any purported "cancellation fee" terms was when bills sent to Plaintiff had placed in fine print that cancellation fees may be assessed for early termination, but no such terms were ever agreed to by Plaintiff and any such agreement would constitute a "contract of adhesion" meaning a contract (in this case, and unsigned form) so imbalanced in favor of one party over the other that there is a strong implication it was not freely bargained.

28. The above debt collectors ("agents") actions are now in complicity with Centurylink (formerly Qwest)'s attempts to collect a fraudulent debt, despite ample notice given by Plaintiff that the purported account and transaction have no factual basis and are in dispute. Nor was there any evidence provided by Centurylink (formerly Qwest) or the collections agents as to any written or "verbal record" of an agreement to submit to cancellation fees. Centurylink (formerly Qwest)'s actions in connection with said transaction, and/or other communications with the Plaintiff constitute false, deceptive and misleading representations in violation of FDCPA 15 U.S.C. § 1692e. Centurylink (formerly Qwest)'s acts are a per se violation of 15 U.S.C. § 1666, is a per se violation of the FDCPA, 15 U.S.C. 1692 et seq., FCBA, 15 U.S.C. § 1666 et seq., FCRA, 15 U.S.C. § 1681 et seq., ECOA, 15 U.S.C. § 1691 et seq., TILA, 15 U.S.C. § 1601, and Utah's CSPA, and is fraud per se.

29. In connection with said transaction, Centurylink (formerly Qwest)'s continuous communications were intended to annoy, abuse and harass the Plaintiff and constitute a violation of 15 U.S.C. § 1692(d). Centurylink (formerly Qwest)'s acts are a per se violation of the FDCPA, 15 U.S.C. 1692 et seq., FCBA, 15 U.S.C. § 1666 et seq., FCRA, 15 U.S.C. § 1681 et seq., ECOA, 15 U.S.C. § 1691 et seq., TILA, 15 U.S.C. § 1601, Utah's CSPA, and is fraud per se.

30. In connection with said transaction, Centurylink (formerly Qwest) caused confusion and/or misunderstanding as to the source, sponsorship, approval or certification of its consumer credit line in violation of Utah's CSPA, and accompanying rules and regulations, and are fraud per se.

31. In connection with said transaction, Centurylink (formerly Qwest) caused confusion and/or misunderstanding as to the affiliation, connection or association with a telecommunications service and is fraud per se.

32. In connection with said transaction, Centurylink (formerly Qwest) indicated they had sponsorship, approval, characteristics, uses and benefits that the telecommunications service did not have in violation of Utah's CSPA, and accompanying rules and regulations and is fraud per se.

33. In connection with said transaction, Centurylink (formerly Qwest) represented that its telecommunication service was of a particular standard.

34. In connection with said transaction, Centurylink (formerly Qwest) committed unfair, deceptive and unconscionable acts and practices in violation Utah's UPA, and accompanying rules and regulations. Said acts and practices include but are not limited to violations of TIL, FCBA, FCRA, ECOA, FDCPA and are per se UDAP and UAP violations; breach of contract; misrepresentation; harassment; stalling and evasion of legal duties; untimeliness, etc. and fraud.

35. As a result of Defendants' violations of the FCRA and their unfair, deceptive, and unconscionable acts and practices, Plaintiff suffered and continues to suffer damages to her credit reputation.

36. Defendants knowingly committed said unfair, deceptive and unconscionable acts and practices.

STATE LAW ALLEGATION

37. Plaintiff realleges and incorporates allegations 1-36 above.

38. Defendant, Centurylink (formerly Qwest), sets the price for the alleged cancelation at $$2,079.86 in demand letter.

39. Plaintiff alleges that Centurylink (formerly Qwest) is setting the higher price in their "COLLECTION NOTICE" because Defendant wants a number that is high enough to make it enormously profitable, yet low enough that recipients of their letters, who allegedly agreed to extend their contracts, would be hard pressed to find competent counsel who could defend the claim at that level of damages.

40. The prices for the alleged cancellation if purchased or negotiated through Centurylink (formerly Qwest) directly, instead of through the purported collection agencies are different. Therefore, the proposed "cancellation" price is in no way related to any actual price.

41. In establishing the cost of a cancelation, Defendant, by authorizing third party outside of the ordinary channels of trade,

Centurylink (formerly Qwest) is justifying a price lower than the one based upon the "cancellation" price – again indicating the "cancellation" price is a "scam" price and not an actual price.

42. Pricing in the industry and by Centurylink (formerly Qwest) for customers who were told they would "save money on their phone bill" is exclusively based later trying to include a longer contract extension without disclosing that information over the phone. Therefore, the "cancellation" is arbitrary and not related to an actual monthly charge.

43. Since the alleged "contract extension" agreement was never offered or disclosed during the phone campaign, despite any artful wording in the resulting billing from Centurylink (formerly Qwest) there was never a contract with Plaintiff to extend the time under the contract or an amount for early termination.

44. The most blatant and/or clear cut violation of good faith and fair dealing involves Centurylink (formerly Qwest)'s and AFNI's use of unfair and deceptive trade practices.

45. Plaintiff realleges and incorporates allegations 1-44 above.

46. In sending out these letters with an immediate demand for "payment" unless Centurylink (formerly Qwest) had actual proof of an contract extension, Defendant is causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; without merely informing the recipient of potential contract extension.

47. The COLLECTION NOTICE goes on to state "this is an attempt to collect a debt. Any information obtained will be used for the purpose." This blatant misstatement of the law is designed to invoke payment from the letter recipient. When AFNI is contacted informing them that they had already sent a Dunning Notice for Qwest, AFNI's response is that it does not matter because Qwest is no longer in business and that any collection for Centurylink is a new debt.

48. The Centurylink (formerly Qwest) and AFNI letters are not an offer for settlement, but a demand for payment.

49. In sending their demand for payment knowing full well that when customers signed up for the phone services did not know they were extending the time of the contract, this communication resulted in false advertisement in the US postal mails that appears as a demand for Payment for goods or services neither requested by nor received by Plaintiff, where Centurylink (formerly Qwest) and AFNI are using

Deceptive Trade Practices in direct violation of the Utah Truth in Advertising Act as follows:

a. causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

b. causing likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another;

c. using deceptive representations or designations of origin in connection with goods or services;

d. representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

e. representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or second-hand;

f. representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

g. disparaging the goods, services, or business of another by false or misleading representation of fact;

h. advertising goods or services or the price of goods and services with intent not to sell them as advertised;

i. advertising goods or services with intent not to supply a reasonable expectable public demand, unless: (i) the advertisement clearly and conspicuously discloses a limitation of quantity; or (ii) the person issues rainchecks for the advertised goods or services;

j. without clearly and conspicuously disclosing the date of the price assessment makes a price comparison with the goods of another based upon a price assessment performed more than seven days prior to the date of the advertisement or uses in an advertisement the results of a price assessment performed more than seven days prior to the date of the advertisement without disclosing, in a print ad, the date of the price assessment, or in a radio or television ad, the time frame of the price assessment;

9

k.  advertises or uses in a price assessment or comparison a price that is not that person's own unless this fact is: (i) clearly and conspicuously disclosed; and (ii) the representation of the price is accurate;

l.  represents as independent an audit, accounting, price assessment, or comparison of prices of goods or services, when the audit, accounting, price assessment, or comparison is not independent;

m.  represents, in an advertisement of a reduction from the supplier's own prices, that the reduction is from a regular price, when the former price is not a regular price as defined in Subsection 13-11a-2(14);

n.  advertises a price comparison or the result of a price assessment or comparison that uses, in any way, an identified competitor's price without clearly and conspicuously disclosing the identity of the price assessor and any relationship between the price assessor and the supplier;

o.  makes a price comparison between a category of the supplier's goods and the same category of the goods of another, without randomly selecting the individual goods or services upon whose prices the comparison is based;

p.  makes a comparison between similar but nonidentical goods or services unless the nonidentical goods or services are of essentially similar quality to the advertised goods or services or the dissimilar aspects are clearly and conspicuously disclosed in the advertisements; or

q.  has engaged in other conduct which similarly creates a likelihood of confusion or of misunderstanding.

DAMAGES
50. WHEREFORE, Plaintiff prays for judgment against all the Defendants for:

51. Immediate stay of any pending collection actions by Defendants.

52. Defendant's forfeiture of the right to collect the disputed amount claimed by Defendants as of January 2011 and any finance charges or other related charges on that amount, pursuant to 15 U.S.C. § 1666(e) and up to the full amount of the purported line of credit or any other amounts.

Case 2:11-cv-01019-DN Document 1 Filed 11/03/11 Page 11 of 12

53. Damages in the amount of twice the finance charge but not less than $100 nor greater than $1,000 pursuant to TIL § 130(a)(2);

54. Statutory damages in the amount of $1,000 pursuant to 15 U.S.C. 1681n for willful noncompliance with the FCRA;

55. Statutory damages in the amount of $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

56. Recovery of damages to credit reputation;

57. Punitive damages in the amount of $10,000 for the Defendants' malicious disregard for the Plaintiff's rights and/or their intentional violation of federal law pursuant to pursuant to 15 U.S.C. § 1691e(b);

58. Damages in the amount of actual damages, or $500, whichever is greater. If the trier of fact finds that the violation was willful, it may increase damages to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater., pursuant to Utah CSPA and UPA;

59. Under State Consumer Protection Claims, Plaintiff seeks either actual damages (to be proven at trial) and to enjoin the defendant from a continuance of the violation. It is not necessary that actual damages to the plaintiff be alleged or proved. In addition to such injunctive relief, the plaintiff is entitled to recover from the defendant three times the amount of the actual damages sustained or $2,000, whichever is greater, plus court costs.

60. Costs and reasonable attorney's fees;

61. An order directing Centurylink (formerly Qwest) to cease and desist in reporting Plaintiff delinquent and to contact all major credit bureaus to report that the account in question has been closed by creditor and that the consumer debt was in fact never incurred by Plaintiff.

62. A declaratory judgment that Defendants' practices herein complained of are unfair, deceptive, and unconscionable sales practices, and an injunction against continuation of these practices by Defendants; and

63. Such other and further relief as this Court deems proper.

JURY DEMAND

11

Plaintiff hereby demands trial by a jury on all issues so triable.

Respectfully submitted,

this   3rd   day of  November  , 2011

BY:   /s/ James L. Driessen
       James L Driessen, Attorney for Plaintiff